UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
x
UNITED STATES OF AMERICA,

                Petitioner,

   -against-

FINANCIAL INDUSTRY REGULATORY
AUTHORITY ("FINRA"),

                Respondent.
------------------------------------------------------------
x

**MEMORANDUM**
Case No. 09-MC-188

**BLOCK, Senior District Judge:**

On April 8, 2009, the Court denied the petition of the United States Attorney for the Eastern District of New York ("U.S. Attorney") for an order directing the Financial Industry Regulatory Authority ("FINRA") to show cause why it should not be enjoined from conducting arbitration proceedings in the matter of *RaceTrac Petroleum, Inc. v. Bear Stearns & Co., et al.*, FINRA Dispute Resolution Arbitration No. 07-03561, pending completion of a related criminal case – *United States v. Cioffi*, Case No. 08-CR-415 (E.D.N.Y. filed June 18, 2008) – now pending before the Court. This memorandum sets forth the Court's reasons for denying the petition.[1]

---

[1] The Court's usual practice is to sign an order to show cause and then, having given all interested parties an opportunity to respond, address the underlying relief sought. There is, however, no need to issue an order to show cause when the party seeking the order fails to make out a *prima facie* case for the relief he or she seeks. *See, e.g., Ray v. Patterson*, 2008 WL 1752244, at *1 (S.D.N.Y. Apr. 14, 2008) ("I declined to sign the order to show cause because the complaint and supporting papers did not make out a case entitling the movant to the relief he sought.").

**I**

The arbitration at issue is between RaceTrac Petroleum, Inc. ("RaceTrac"), and Bear Stearns & Co., Inc., Bear Stearns Securities Corp. and Bear Stearns Asset Management, Inc. (collectively, "Bear Stearns").  Although the defendants in the criminal case are not parties to the arbitration, both proceedings involve the same subject matter – namely, whether the criminal defendants' conduct in connection with the hedge funds they managed amounted to securities fraud. As a result, many of the witnesses to be called at the arbitration are potential witnesses in the criminal case.

Prior to seeking an injunction, the U.S. Attorney asked the parties to the arbitration proceeding to voluntarily agree to a stay.  Bear Stearns acquiesced in the U.S. Attorney's request, while RaceTrac opposed it.  FINRA declined to unilaterally stay the arbitration proceeding, but stated that it would comply with a court-ordered stay.

**II**

A district court unquestionably has the authority under the All Writs Act, 28 U.S.C. § 1651(a), to enjoin proceedings that threaten to interfere with its jurisdiction over a pending criminal case.  Whether a particular proceeding poses such a threat is another matter. *See United States v. Eberhard*, 2004 WL 616122, at *3 n.6 (S.D.N.Y. 2004) ("If this Court does not choose to exercise that power [to stay arbitrations], it is not for lack of such power but because the NASD arbitrations have not been shown to interfere with the Court's jurisdiction.").

Determining whether to enjoin a civil proceeding in the face of a related criminal case is essentially a question of balancing the private parties' interest in a prompt resolution of the civil matter with the government's interest in preserving the integrity of the criminal proceeding. *See Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). "[T]he basic goal [is] to avoid prejudice." *Id.*

The U.S. Attorney asserts that allowing the arbitration to go forward will compromise the criminal case because it will "permit the Criminal Defendants to gain access to witness statements that they would not otherwise be entitled to under the Federal Rules of Criminal Procedure and would therefore frustrate the clear purpose of the Federal Rules and prejudice the public's interest in the criminal justice process." United States's Mem. of Law at 12-13. This argument proceeds from the premise that by limiting discovery, the Federal Rules of Criminal Procedure are intended to enshrine a tactical advantage in favor of the government. But as the Court observed in connection with the U.S. Attorney's motion to stay discovery in the civil enforcement proceeding by the Securities and Exchange Commission ("SEC") against the criminal defendants, "the limits on criminal discovery do not exist for their own sake," *SEC v. Cioffi*, 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008); rather, they are intended to guard against specific concerns:

> (1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Id.* (quoting *Nakash v. United States Dep't of Justice*, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988)).

With regard to the first concern, the U.S. Attorney does not argue that allowing the

3

arbitration to go forward increases the risk of false evidence. Instead, he rephrases the concern as preventing the criminal defendants from having "an opportunity to build a defense tailored to the Government's case." United States's Mem. of Law at 17. By "tailoring a defense," he apparently means that the criminal defendants will have more information with which to highlight potential weaknesses in the government's case. *See id.* at 17-18 (arguing that defendants will use witnesses' arbitration testimony to "prepare to challenge such witnesses on the basis of any insignificant and innocuous inconsistencies that might result between the Arbitration testimony and any subsequent testimony at the criminal case trial."). But the criminal defendants have every right to meet the allegations and evidence against them. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation [and] to be confronted with the witnesses against him . . . ."). One of the most frequent – if not *the* most frequent – means of doing so is pointing out inconsistencies in a witness's testimony.

If there is any concern about "tailoring" here, it is the government's concern with what its witnesses may say at the arbitration. Absent any indication to the contrary, however, the Court must assume that the arbitration witnesses will accurately and honestly report the material facts within their knowledge. Unlike perjury and manufactured evidence, any inconsistencies between the testimony adduced at the arbitration and that adduced at the criminal trial are legitimate fodder for the defense.

With respect to the second concern, the U.S. Attorney argues that early disclosure of the identity of the government's witnesses increases, not the risk of witness intimidation, but of "subordination [sic] of perjury." United States's Mem. of Law at 17. Whether the concern is with witness intimidation or subornation of perjury, however, it is not present here. The identities of the

4

witnesses who will testify at the arbitration have already been disclosed and, indeed, are listed in the U.S. Attorney's memorandum of law, *see id.* at 7, along with the statement that "[a]part from the Criminal Defendants, these same witnesses are all likely to testify at the criminal trial." *Id.* Thus, whatever the risk is that those witnesses will be intimidated or asked to testify falsely, allowing the arbitration to go forward will not increase it.

The third concern – the risk of unfair surprise flowing from the privilege against self-incrimination – is also not present. The testimony that will be adduced at the arbitration is equally available to both the government and the defendants.

**III**

In sum, the only "prejudice" the Court can discern is that allowing the arbitration to go forward will result in the criminal defendants having more information than they would otherwise be entitled to at this stage under the Federal Rules of Criminal Procedure. This loss of the government's usual tactical advantage is insufficient to justify enjoining the arbitration. *Cf. SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage.").

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 9, 2009